## PEOPLE v. REED.

### Cr. No. 350; March 23, 1898.

#### 52 Pac. 835.

**Homicide—Self-defense—Evidence.—On a Trial for Murder,** the opinions of witnesses at the inquest that the defendant committed the homicide in necessary self-defense were not competent as direct evidence.

**Homicide — Self-defense — Evidence. — Where a Defendant Charged** with murder was guilty of the first assault upon decedent, though the same was not felonious, it was incumbent on him in good faith to decline further struggle before he could invoke the right of self-defense to excuse the killing.

**Homicide—Self-defense—Evidence.—Where It Appears That** the Defendant, who made the first assault, received a knife wound and retreated from the deceased, the question whether he then in good faith abandoned the combat, or whether he continued desirous to renew it on the first opportunity, was material in determining his right of self-defense, and where the evidence shows he continued ready and renewed it on the first opportunity, when the deceased was killed, it is sufficient to sustain conviction for manslaughter.

**Homicide. — Rebutting Evidence Showing Defendant's Bad Reputation** for truth is competent, where he testified in his own behalf.

Homicide.—An Instruction Isolating a Single Item of Evidence, and telling the jury that the fact alone of its admission was insufficient to enable it to draw conclusions in connection with other facts as to the facts it tended to establish, was error.

APPEAL from Superior Court, Placer County.

E. P. Reed was convicted of manslaughter, and he appeals. Affirmed.

Jo. Hamilton for appellant; Attorney General Wm. F. Fitzgerald for the people.

BRITT, C.—Defendant was tried on an information charging him with murder. He was convicted of manslaughter, and sentenced accordingly. There was evidence at the trial of the following circumstances attending the homicide: Defendant and the deceased, one L. G. Brown, lived in a small house belonging to defendant, and together followed the business of making shakes in the adjacent forest. Deceased was about seventy years of age, and in infirm health. Defendant was thirty-six years old. The time was about nightfall. Two other persons—Bradley and Woods—came in to visit defendant at his house, and sat down with him at supper. Said Brown got up from a bunk where he was lying, in the same room, and in an insolent manner inquired of Bradley his name, and his business there. Defendant resented this, and rose from the table, and laid hands on Brown, and shoved him down, at the same time applying to him an opprobrious epithet. As Brown fell, his head struck against the bunk and the wall of the room. He arose, and stabbed defendant in the abdomen with a pocketknife having a blade four inches long. Defendant exclaimed, "Boys, I am cut!" and went out the back door of the house, followed by Bradley and Woods. After making some examination of the wound, defendant took up a shovel, and started as if to return to the door whence he had come out, but Bradley took the shovel from him. He and Bradley then went and sat down on a porch in front of the house, defendant complaining of sickness from the effect of the wound. At this time Brown came out of the front door upon the porch, with the knife in his hand. Bradley sprang up, and approached Brown cautiously, and placed his hand on him, saying, "Keep back, Mr. Brown." The latter said nothing, and Bradley,

turned for the purpose, as he testified, "of grabbing the
defendant." This effort failed, and at the same instant
defendant seized a heavy club and struck Brown therewith on
the head, from the effect of which blow Brown died a few
hours later. Woods came from the rear of the house just
as Brown received the blow. After deceased was struck, he
was taken into the house and place in his bunk. Although
insensible, he sat up, and defendant pointed a rifle at him,
saying: "Get out of the way. Let me shoot him." Defend-
ant also threw a coffeepot and a teapot at him, which, how-
ever, failed of their mark. From the time of the first alterca-
tion until the final blow, about five minutes elapsed. A stick
of wood was admitted in evidence after identification as the
club with which defendant struck the deceased. Most of the
matters above stated appear from the testimony of Bradley
and Woods, who were called as witnesses by the prosecution.
On cross-examination, each of them said that at the coroner's
inquest, held the day after the homicide, he had testified that
the killing was in self-defense. Woods admitted also that he
testified on the same occasion that deceased was advancing
upon defendant when the latter struck the fatal blow. On
the morning following the homicide, defendant was heard to
remark that he would as soon kill such people—referring to
Brown—as a rattlesnake. Defendant was sworn as a witness
in his own behalf, and gave testimony more favorable to him-
self, in some particulars, than that of the witnesses for the
prosecution. Thus, he stated that Brown lunged toward him
at the time he struck him with the club; that the stick he
used was smaller than that admitted in evidence, etc. In
rebuttal the court admitted testimony that defendant's repu-
tation for veracity was bad, to which evidence defendant
objected that his own testimony was in harmony with that of
the prosecution, and that the purpose of the rebutting evi-
dence was to prejudice the minds of the jury against him,
and not to impeach his credibility. The court refused an in-
struction to the jury, asked by defendant, to the effect that
from the fact alone of the admission in evidence of the club
with which, the prosecution claimed, Brown was killed, the
jury were not permitted to infer that the fatal blow was
struck with a club, or that the club admitted in evidence was
the identical instrument used to strike such blow.

1. Defendant's chief contention on appeal is that the evidence showed the homicide to have been committed by him in necessary self-defense. Stress is laid on the statements to that effect made by the witnesses Bradley and Woods at the inquest, and which found admission into the evidence at the trial. Obviously, those statements were but opinions upon an ultimate fact, which was for the sole determination of the jury, and were not competent as direct evidence—much less, controlling. Defendant having been the first aggressor, even though his first assault on the deceased was not felonious, it was incumbent on him really and in good faith to decline further struggle, before he could invoke the right of self-defense to excuse the killing of his adversary: Pen. Code, sec. 197, subd. 3; People v. Hecker, 109 Cal. 451, 464, 30 L. R. A. 403, 42 Pac. 307; People v. Robertson, 67 Cal. 646, 8 Pac. 600. It is true that, on receiving the knife wound, defendant retreated from the scene of the first difficulty; but the occurrences which followed made a question proper for the consideration of the jury—whether he had in good faith abandoned the combat initiated by himself, or whether he continued to be ready and desirous to renew it on the first opportunity. It was shown that he indicated such desire very quickly after he withdrew from the house, but was prevented by Bradley's disarming him of the weapon he had obtained. So the transaction on the porch has similar significance. Bradley (who, though testifying apparently with fairness, seems to have been well affected toward defendant) first sought to restrain Brown, approaching him cautiously (a circumstance tending to show that Brown was making no haste), and then turned at once to take hold of the defendant, who was in the act of seizing the club. It was not an unnatural inference from the evidence that fresh violence seemed to Bradley, and really was, more imminent from defendant than from Brown—an inference which defendant's subsequent acts and declarations of revengeful animosity toward Brown tended to confirm. We are satisfied that the verdict was sustained by the evidence.

2. There was no error in admitting rebutting evidence to show defendant's bad reputation for truth: People v. Hickman, 113 Cal. 80, 87, 45 Pac. 175. Without deciding whether the special objections urged, viz., that the testimony of defendant was substantially the same as that of the witnesses pro-

duced against him, would, if true, vary the case, it is enough to say that the record does not sustain that position.

3. As to the refusal of the court to give the said instruction, counsel for defendant says, "This error is too plain to require argument," and accordingly no argument is advanced to support the contention. Thus left without suggestion which might possibly have induced a different view, we conclude, upon consideration, that the instruction was wholly inappropriate to the state of the evidence, and could have afforded the jury no light. It was undisputed that deceased was struck with a club, and there was testimony tending to show that the exhibit in evidence was the weapon used to strike him. As well have isolated any other single item of evidence, and have told the jury that from the fact alone of its admission they were not permitted to draw a conclusion which, viewed in its proper connection with other facts, it tended to establish. The judgment and order appealed from should be affirmed.

We concur: Belcher, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.